## CORWIN *against* THE NEW-YORK AND ERIE RAILROAD COMPANY.

Where a railroad corporation neglects to maintain fences and cattle guards along its road, as required by the general railroad act (*Laws of* 1850, *p.* 233, § 44), and cattle get upon the track and are injured by its engines or cars, the corporation is liable to the owner in damages, although he is not an adjoining proprietor, and it does not appear how or whence the cattle came upon the road.[1]

It seems that a railroad corporation, which omits to comply with the statute as to erecting and maintaining fences and cattle guards, is liable to the owner of cattle which stray upon the track from an adjoining close, or the highway crossing it, and are there injured by the engines of the company, although they were not lawfully in such close or highway.

In such a case, the mere negligence of the owner, in permitting his cattle to stray upon the land of another adjoining the railroad, or to run at large in the highway which crosses it, is not a defence to the corporation. *Per* MARVIN and DENIO, JJ.

The duty imposed by the statute upon railroad corporations is not limited to the maintenance of fences and cattle guards, as against the animals of adjoining occupants, or those lawfully in the highway. *Per* MARVIN and DENIO, JJ.

THE action was commenced in 1852, in the supreme court, to recover damages for injuries done by the defendant to a pair of oxen owned by the plaintiff. The place of trial was the county of Broome. After issue was joined, the cause was referred to and tried before Robert Morrell, Esq., as sole referee. The pleadings admitted that the defendant was a corporation, created by the Laws of the State of New-York, to construct and operate a railroad; that it had constructed a portion of its road through the county of Broome; and that, at the time of the injuries complained of, it was accustomed by its agents to run engines and cars over that portion of the road. The finding of facts by the referee contained in the case was as follows:

---

[1] *Rhodes* v. *Utica, Ithica and Elmira Railroad Co.*, 5 Hun 344. *Duffy* v. *New York and Harlem Railroad Co.*, 2 Hilt. 496. The cases of *Clark* v. *Syracuse and Utica Railroad Co.*, 11 Barb. 112, and *Marsh* v. *New York and Erie Railroad Co.*, 14 Ibid. 364, appear to be hereby overruled.

" That the plaintiff was the owner of a pair of oxen worth $110; that the last of May, 1851, the oxen were on the track of the New York and Erie Railroad Company, at a place called the 'Summit,' in the town of Sandford, Broome county; that at the time a train of cars with an engine passed on the railroad track at said place belonging to the railroad company; that one of the oxen was at that time struck by the engine and severely injured, requiring aid and attention, and for some time rendered unable to labor; that in October, 1851, both of the oxen were on the railroad track of the company, near the same place where the first injury occurred; that an engine and train passed and killed one of the oxen, and so much injured the other ox which had been injured before that he was worthless; that at the time of both occurrences, the railroad at that part of the route was not fenced, nor were cattle guards erected at the crossing place across said road; that the land on each side of the railroad where the oxen were injured belonged to Uriah Gregory, who had deeded to the railroad company in fee the right of way of said road, and Gregory, by a covenant contained in the deed, agreed with the company to erect and forever maintain all necessary fences on each side of the railway across his farm; that there was a public highway crossing the railroad track within the bounds of the lands conveyed by Gregory to the defendant, not protected by fences or cattle guards; that the first injury to the one ox occurred on the track about twenty-five rods from the crossing of the public highway, and the second injury occurred still further from the crossing; that it does not satisfactorily appear how, in either case, the oxen came on the track; but from evidence, the referee is of opinion, and finds accordingly, that there being no fences or cattle guards, they passed on to the track by the public crossing place or highway; how they happened, or were there, does not appear; that the same oxen had been seen on the railroad track three or four times before these occurrences. That the loss of the plain-

tiff is the entire value of his oxen, worth $110, and the interest accruing thereon since October, 1851."

It appeared from the case that Gregory occupied his land situate each side of the railroad, at the place where the oxen were injured. It did not appear where the plaintiff resided or where the oxen were usually kept.

As matter of law, the referee decided that the defendant was liable for the damages sustained by the plaintiff which he assessed at $119.62; and he ordered judgment for this sum with costs, which was entered; and the counsel for the defendant excepted. On appeal, the supreme court sitting in the 6th district, reversed this judgment and gave judgment against the plaintiff for the costs of the action. The plaintiff appealed to this court.

*D. S. Dickinson*, for the appellant.

*N. Hill, Jr.*, for the respondent.

MARVIN, J   In May, 1851, the plaintiff's oxen were upon the defendant's road at a place called the "Summit," in the town of Sandford, Broome county, and one of them was hit and injured by a passing train. In October of the same year, the same oxen were again upon the track of the road, and the locomotive and train of cars run over one of them and killed it, and struck and greatly injured the other. The road where the injury occurred, and for some distance each way, passed through land belonging to one Gregory; that is, Gregory owned the land on each side of the railroad, and had conveyed to the defendant the land for the road, and covenanted in the deed to make, and forever maintain all necessary fences on both sides of the road. The railroad crossed a highway some twenty-five to thirty rods from the place where the injury in May happened, and some seventy or eighty rods from the place where the injury in October occurred. The highway was on or through the land

of Gregory; the railroad was not fenced, nor was there any cattle guard at the crossing of the highway. The plaintiff's farm did not adjoin the railroad. It does not appear from the evidence where the oxen entered upon the railroad; they could enter from the lands along the sides of the road or from the highway. The referee says "it does not satisfactorily appear how, in either case, the oxen came on to the track; but from evidence, I am of opinion, and find accordingly, that there being no fence or cattle guards, they passed on to the track by the public crossing place or highway. How they happened or were there, does not appear." There is not a particle of evidence tending to show that the oxen entered upon the railroad where it crosses the highway, and the referee says, it does not satisfactorily appear how the oxen came on to the track; but in the view I take of the case, this question will not probably be material. If the oxen entered upon the railroad from the adjoining lands of Gregory along the sides of the road, was the defendant liable, there being, in fact, no fence at the place of such entry? I am not aware that this question has been decided in this state since the general railroad act of 1848 became a law.

The question is of much practical importance and calls for the construction of § 44 of the general railroad act of 1850 (*Laws of* 1850, 233), which contains the same provisions as § 42 of the act of 1848. The language is: "Every corporation formed under this act shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad; and also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be

done by their agents or engines, to cattle, horses or other animals thereon; and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or willfully done."

By the common law, the owner was bound to take care that his cattle did not leave his own lands and trespass upon those of his neighbor (*Pomfret* v. *Ricroft*, 1 *Wm's Saund.*, 321); if they did, he was himself liable for damages in an action of trespass. It has long been settled in this state, that there can be no recovery in an action on the case for negligence, where the negligence or misconduct of the plaintiff contributed to the injury; hence it was repeatedly decided, prior to the general railroad act of 1848, that one whose cattle were trespassing upon the railroad at the time they received the injury, could not recover damages of the railroad company. It will only be necessary to refer to *The Tonawanda Railroad Company* v. *Munger* (5 *Den.*, 255), where the whole question is ably considered. (*S. C. on Appeal*, 4 *Comst.*, 349.) It is clear, from the case just cited and from the well established principles of the common law, that, aside from the statute, the plaintiff in this case could not recover. We are then to consider whether the statute has made any change in the law, and if so, what, and whether it embraces the plaintiff's case and entitles him to recover. It should be here remarked that we have long had statutes in this state touching division fences; and there have been many decisions respecting the rights and remedies of adjoining proprietors where cattle have trespassed through defective fences. It has been decided that the land proprietor is not bound to fence against any cattle which are not lawfully in the adjoining close of his neighbor. In other words, if the cattle trespassing upon him, come as trespassers from the adjoining close of his neighbor, their owner could not defend upon the ground that the fence of the plaintiff was defective, or that there was no fence.

Corwin *against* The, New-York and Erie Railroad Co.

Having briefly adverted to the state of the law, prior to the statute, we are prepared to consider it. As we have seen at common law, the owner of cattle must keep them upon his own .premises; and we have also seen, that if he did not, they were trespassers and he was guilty of negligence; and when his negligence contributed to their injury, he could not recover for an injury on the ground of negligence in the defendant. Were these principles proper and sufficient when applied to the new circumstances and condition of things arising out of the general introduction and use of railroads in the country? They may have been entirely satisfactory and sufficiently protective under the old order of things. But a new state of things has arisen: a power, but recently discovered and applied to the uses of man, has been appropriated as a motive power to the moving of large and heavy bodies at a velocity before unknown, acquiring a momentum and speed endangering the lives of all animals coming in contact with the moving mass, whether locomotive or cars, and at the same time putting in jeopardy the lives and limbs of all those who are connected with the train. The danger to passengers, as science will demonstrate and as experience has shown, is great and imminent whenever the locomotive or cars in their rapid movement come in collision with any substance disturbing the regularity of the motion or speed acquired. An ox, cow or horse upon the track presents a substance sufficient, often to throw the engine and cars from the track, and thus cause a general wreck in which many lives are lost and limbs broken. To guard against these dangers it is necessary that all animals should be kept from the track; this can only be done by securing the track by fences and cattle guards at road crossings, or in some other way. Was it safe to leave this important matter to the thousand proprietors of lands along the sides of the road? Experience had shown that it was not; it had also shown that there was and would be much litigation growing out of the killing and injuring

of cattle along the road, producing irritation and exciting angry, and at times vindictive passions. Under these circumstances the statute in question was enacted and, in my opinion, it changed very essentially the law. The *general duty* of erecting and maintaining fences on the sides of their roads is now imposed upon the railroad corporations; this duty is to be performed for the public benefit and security and also for the benefit of the owners of cattle generally. In short, the corporations are to erect and maintain the fences; and until they do so, they and their agents are liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon. The language of the statute is general; it is not limited to damages done to the cattle, &c., of the *adjoining* proprietor, or to cattle, &c., which were lawfully upon the adjoining premises, but it extends, where there is no fence erected, to all cattle, horses or other animals. The statute says nothing about negligence in either of the parties. It is, however, immediately added, that after such fences, &c., shall be duly made and maintained, the corporation shall not be liable for such damages, unless negligently or willfully done.

It has been suggested that a literal reading of the statute would render the corporation liable, in the absence of fences, for an injury to cattle, when the owner had driven them and left them upon the road. The statute, like others, must receive a reasonable construction. We must ascertain the object and intent of the legislature; and in our endeavors to ascertain such intent, and the object and scope of the provision, we are permitted to consider the state of things at the time the law was enacted. We know that cattle often strayed from the close of the owner; that they often trespassed upon the lands of a neighbor, where such neighbor's land adjoins the railroad. The owner of the cattle will be liable in damages to his neighbor for the trespass; but it by no means follows, since the statute,

that if his cattle go from his neighbor's land on to the track of the railroad, and are killed, the corporation will not be liable, there being no fence. And to this extent I think the statute excludes the negligence of the plaintiff, as a defence. But should it appear that the plaintiff drove his cattle on to the road, or into the neighborhood of the road, and left them there, or did any other positive act increasing the danger to his cattle, a very different question would be presented. The maxim, *volenti non fit injuria*, would then apply; or if it should appear that cattle had come upon the road where fences had been " duly made and maintained," by leaping or prostrating them, or through a gate, and had strayed along the road to a place where it was not fenced, and been there killed, a very different question would be presented. In the case under consideration, there is no evidence or finding of the referee, to show how or where the plaintiff kept his oxen; whether they were or were not kept upon his own premises; whether or not they strayed into the highway, and thence on to the railroad. In my opinion, this case comes within the statute, its letter, design and object; and whatever negligence appears in the case, on the part of the plaintiff, is as a defence to this action, excluded by the statute.

It has been noticed that Gregory, who conveyed the land for the road through his farm, was bound, by his covenant with the defendant, to erect and maintain the fences. The plaintiff is a stranger to this covenant, and cannot be bound by it. Had Gregory's cattle entered upon the road from his land, by reason of there being no fence, and been injured, his covenant would have been a good answer to the action. It must be borne in mind that the statute imposes the duty generally upon the railroad company, to erect and maintain the fence; and the public and individuals have a right to hold the company responsible for the performance of this duty. If Gregory had erected and maintained the fence, this would have satisfied the statute, as the railroad com-

pany would have caused the erection of the fence; but until the fence was erected, the company remained liable for the omission.

Several cases have arisen since the statute, and been decided by the supreme court. In *Suydam* v. *Moore* (8 *Barb.*, 358), the railroad company had not erected fences: a cow came on to the track and was killed. The action was against the engineer and fireman, and it was held that the company or its agents were liable to the owner of the cow, without any proof of negligence. In *Waldron* v. *Rensselaer and Saratoga R. R. Co.* (8 *Barb.*, 390), the company had not erected any fence. A horse was killed by the train in the night, and found a few feet from the place where the railroad crossed the highway. There was no cattle guard; it was held, the corporation not having erected fences or constructed cattle guards, that it was chargeable with negligence, and responsible for the injury. These cases were decided in the 4th judicial district. In *Brooks* v. *The N. Y. and E. R. R. Co.* (13 *Barb.*, 594), the cows entered from the highway on to the railroad, through a gate erected across a passage or way leading from the highway across the railroad to a brick yard. The gate had been left open, and the cattle entered and strayed along the railroad where it was not fenced. There was no cattle guard where the way to the brick yard crossed the railroad. It was held that the company was not bound to construct a cattle guard at this crossing; also, that the company were not liable. Justice Shankland expressed the opinion, that cattle of a stranger, on the premises of an adjoining proprietor without right, are not within the protection of the statute. This opinion was not necessary to the decision of the case. He very properly says, that the only real point necessary to be decided in the case is, that when the cattle of a stranger are on the lands of a proprietor adjoining a railroad, and from those lands pass on to the railroad through a gate left open by the proprietor of the said lands, and are

killed, their owner cannot recover, although the defendant has not complied with § 44 of the general railroad act in respect to fences at other points on the said road. The case was decided upon this position. In *Marsh* v. *The N. Y. and E. R. R. Co.* (14 *Barb.*, 364), the cow killed was usually pastured in the highway and commons. She was killed at a place where the railroad was not fenced. It was held that railroad corporations are responsible for damages caused by them when they omit to make fences, whether from carelessness, mismanagement or willfulness, or from inevitable accident; but are not answerable for the carelessness or willful misconduct of those who, from such causes, sustain injuries from them; that .if cattle stray upon the track, through the negligence and carelessness of their owners, the corporation is not liable; that it is gross negligence for a person to suffer his cattle to go at large on the highways in the immediate vicinity of a railroad, whether the railroad be fenced or not. As I understand, one of the learned judges lays much stress upon the language,—damages which shall be done by their agents or engines, &c.,—arguing that when the owner of the cattle has been guilty of carelessness, or willful misconduct, it cannot be said that the company has caused the damage by their agents or engines. I cannot concur in the construction given to the statute in that case, for the reasons already stated. It is, in my opinion, quite too narrow. In *Fawcett* v. *The York and North Midland Railway Co.* (2 *Eng. Law and Equity R.*, 289), the plaintiff's horses, being in the highway, passed through an open gate on to the railway, and were killed. By the railway act, it was made the duty of the railway company to erect gates across the highways at the crossings of the railway, and to keep them constantly closed, except, &c. It was insisted by the defendant, that the horses were not lawfully in the highway, and that therefore the company was not bound to keep the gate closed against them; but it was held that the company was liable. This case is in point. The duty of

erecting gates and keeping them closed was imposed upon the railway company, and as to them, the court would not inquire how the horses came into the highway; but as to the company, held, that the horses were lawfully on the highway. In *Ricketts* v. *The East and West India Docks and Birmingham Junction Railway Company* (12 *Eng. L. and Eq. R.*, 520), the sheep were trespassing upon a close adjoining the railway, and through a defect of fences strayed upon the railway and were killed. It was held that the plaintiff could not recover at common law or under the railway act; that the company was only bound to fence as against the owners or occupiers of the adjoining close; that the statute, as to other persons, had not changed the common law. The statute imposed the duty upon railways, to make and maintain sufficient fences for separating the land taken for the use of the railway from the adjoining lands not taken, and protecting such lands from trespass, and the cattle of the owners and occupiers thereof from straying thereout, &c. It is quite clear that this statute did not impose the general duty of making and maintaining fences, as against all cattle in the adjoining close, whether rightfully or wrongfully there. They were to make fences for protecting the lands not taken from trespasses, and the cattle of the owners or occupiers from straying, &c. The common law, as to cattle trespassing upon the adjoining close (as the sheep were), was not changed. Our statute is not thus restricted. By it the duty to erect and maintain fences upon the sides of the road is general, as the statute in *Fawcett's case, supra,* was to erect and keep closed the gate; and our railroad companies cannot raise the question, when they have omitted to make fences, whether the cattle were *lawfully* upon the adjoining close. Having failed to perform the duty enjoined by the legislature, they are, by the plain language of the statute, liable " for all damages which shall be done by their agents or engines, to cattle or other animals thereon."

Corwin *against* The New-York and Erie Railroad Co.

The judgment of the supreme court should be reversed, and the judgment directed by the referee should be affirmed.

DENIO, J. I am of opinion that the statute which we are called upon to construe is not to be regarded as merely a regulation, respecting division fences, between the land of the railroad corporations and those of adjoining property; but that it is rather to be considered as providing a safeguard for the protection of the lives of persons traveling by railroad, and of the property in animals, which citizens in the vicinity of those roads may own. If the land comprised within a railroad tract might be entered upon with no more hazard than an adjoining farm, it might be reasonable to construe the act as simply a modification of the law regarding division fences. But when we consider that these tracks are incessantly traversed by engines, driven at a great speed, and with a force practically irresistible, and that an intrusion thereon is very likely to result in the destruction of the intruder, and in loss of life to those who are traveling upon the road, we cannot but see that the legislature had something further in view than the pecuniary burthen of maintaining fences between adjoining proprietors of land. The injunction upon the railroad corporations, to construct and maintain the fences and cattle guards, is positive and unqualified, and it is obvious that the whole community has a deep interest in its observance. If the part which relates to fences, were to be taken to be only a portion of the law respecting division fences, it might be dispensed with by agreement between the corporation and the adjoining proprietors, and no other person would have a right to complain; and yet it cannot be doubted but that most of the public objects of the law would in this way be defeated.

I am of opinion that the statute imposes a public duty upon the railroad corporations, for a violation of which they are subject to indictment, whether individual interests are

affected or not. Having imposed this general and public duty, the legislature has next proceeded to declare some of the consequences of its omission. The corporation in that case is to "be liable for all damages which shall be done by their agents or engines, to cattle, horses or other animals thereon." The defendant neglected to make cattle guards and fences; and for want of these safeguards, the plaintiff's cattle came upon the track of the railroad and were destroyed. We are asked to imply an exception to the positive language of the statute, and to hold that unless the plaintiff's cattle are shown to have been lawfully in the highway or in the adjoining field, the case is not within the spirit of the act. This position can only be maintained by assimulating the act to the law respecting division fences; and if I am right in supposing that the legislature had in view the more important objects referred to, and really intended to compel the railroads to be kept fenced, and protected by cattle guards against animals straying thereon from highways, there is no ground for that interpretation. I am satisfied that the design of the section is to require the railroad companies to inclose their track within substantial fences, and to guard it by the ditches called cattle guards, from the approach of animals wandering on the highways, and that one method provided for securing that object is the provision charging the companies with damages for all injuries done to animals, where they have disregarded the statute; and moreover, that it is not material from whence or under what circumstances the animals come upon the track, provided they are enabled to get there by the absence of fences or cattle guards. The case of a person willfully driving his cattle upon a railroad track, would involve the application of another principle. No one can charge another with damages which he has willfully brought upon himself, for *volenti non fit injuria.*

The court of queen's bench has taken a similar view of a provision in an English railroad act of the same general

purport, but less strong in its language. (*Fawcett* v. *The York and North Midland Railway Co.*, 2 *Eng. Law and Eq. Rep.*, 289.)

I am also in favor of reversing the judgment of the supreme court.

GARDINER, C. J., JOHNSON and DEAN, JJ., were also in favor of reversing the judgment of the supreme court at general term, and affirming that rendered by the referee.

HAND, J., dissented. CRIPPEN, J., took no part in the decision.

Judgment accordingly