## TALLMAN v. SYRACUSE, &c. R. R. CO.

### December, 1868.

The general railroad act of 1850 requires the companies to erect fences of sufficient height and strength to prevent cattle and other animals from getting upon the railroad.

The fact that the language of the act requires such fences to be of the height, &c., of a division fence required by law, while the statutes prescribe no height, &c., for division fences, does not render the act inoperative.

Moses F. Tallman sued the Syracuse, Binghamton and New York R. R. Co., in the supreme court, to recover damages for injuries to his cattle by defendants' engine in July, 1860, when the cattle were on the railroad where it crossed plaintiff's farm. At the time of the occurrence there was no fence on the east side of the railroad for a distance of forty rods between the railroad and plaintiff's farm, and in other places the fence there was so defective that cattle could easily pass from the farm on to the road. There was evidence tending to prove that the cattle must have come upon the railroad through these defects or absence of fence, and the neglect to maintain the fence was the ground on which plaintiff sought to recover.

Defendant asked the judge at the trial to dismiss the complaint on the ground that, as the only statute requiring railroad companies to maintain fences, requires them to maintain fences " of the height and strength of a division fence required by law," &c., and that, as there is no such height, &c., prescribed by statute for division fences, the requirement was inoperative. The court refused the request.

Defendants then gave evidence tending to prove that the cattle came upon the railroad through a gate which plaintiff had left open, thus exonerating themselves from negligence, but plaintiff gave evidence tending to prove that the gate had not been open.

The court charged that if the jury found the cows were injured in consequence of the gate being left open, the verdict should be for defendants, but if in consequence of defendants' neglect to erect and maintain fences on the sides of their road, of the height and strength required by law, plaintiff should have a verdict for the amount of the injuries sustained; to which defendants' counsel excepted.

CLERKE, J. [After stating the facts.]—The only question, then, in this case, is whether the defendants were required by law to erect fences along the sides of the road between the plaintiff's farm and the railroad. The general railroad act of 1850 (*L.* 1850, p. 233, § 44), requires "that every corporation formed under this act, shall erect and maintain fences on the sides of their road, of the height and strength of a division fence *required by law*, with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad ; and also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on the railroad. Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines, to cattle, horses, or other animals thereon; and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or wilfully done."

The defendants' counsel insists that no obligation rested on the defendants to erect the fences, because the statute directs that they should be of the height and strength of a division fence, "*as required by law*," and as there was no law fixing the height and strength of a division fence, the statute itself was a nullity, and could not be enforced. It does not appear that there is any other law fixing the height and strength of a division fence, and unless we can find in this act sufficient to warrant us, according to the rules governing the construction of statutes, the proposition of the counsel must probably prevail. In Corwin *v.* N. Y. & Erie R. R. Co., 13 *N. Y.* (3 *Kern.*) 42, which was an action brought to recover damages

for precisely the same injuries and omission as are alleged in this case, it was held, that a railroad corporation which omits to comply with the statute as to erecting and maintaining fences and cattle guards, is liable to the owner of cattle which stray upon the track from an adjoining close, or the highway crossing it, and that the mere negligence of the owner in permitting his cattle to stray upon the land of another adjoining the railroad, or to run at large upon the highway crossing it, is not a defense to the corporation.

But the question relative to the alleged defect in the statute did not arise, or rather was not noticed, in that case. Indeed, it does not appear to have occurred to any one engaged in the trial or argument.

It cannot be denied, that it was the intention of the legislature to require from railroad corporations some protection for the public benefit, and that this protection consisted in erecting fences suitable for the purpose in view. The object of this provision of the statute is not merely to protect the cattle and other animals of adjoining or neighboring proprietors, but to protect the lives and limbs of passengers, and all persons connected with the train. A locomotive moving at the usual rate of velocity, attached to a long train of cars, coming in contact with an animal on the track, is in imminent danger of being thrown from it, together with some or all the cars composing the train, and thus the destruction of many lives, and injuries to the persons of many of the passengers would, probably, if not inevitably, follow. This provision of the statute, then, is unquestionably for the public good. The well known rule, consequently, applies: "A statute made *pro bono publico* shall be construed in such a manner that it may, as far as possible, attain the end proposed." Pierce *v.* Hopper, *Strange*, 253, 258 (referred to in *Bacon's Abridgment*, Statute, I, sub. 7). The New River water act was held to extend to places adjacent, although only the city of London was mentioned in it; "because all statutes made for the convenience of the public ought to have a liberal construction" (New River Co. *v.* Graves, 2 *Vern.* 431, referred to in *Bac. Abr.* Statute, I, sub. 7). It has always been enjoined as a duty upon judges to put such a construction upon a statute as may redress the mischief, guard

against all subtle invention and evasions for the continuance of the mischief, and give life and strength to the remedy *pro bono publico*, according to the true intent of the makers of the law.

What was the evident intent of the legislature in enacting this provision of the railroad act of 1850? The intent clearly was, that railroad companies should erect fences of sufficient height and strength to prevent cattle and other animals from getting on the railroad. And if one portion of this section was transposed, or even if the punctuation was changed a little, the last part of the sentence may be applied to the erection and maintenance of fences, as well as to the construction and maintenance of cattle guards at all railroad crossings; so that the provision might be held to direct, that the fences should be of such height and strength as may be sufficient to prevent cattle and other animals from getting on the railroad. I think the construction given by the supreme court correct.

The judgment should be affirmed, with costs.

MASON, J.—There was no contest upon the trial, over the height and strength of the fence. There were forty rods beside the plaintiff's fields where no fence at all had been erected, and in many other places along the sides of the defendants' road, where it crosses the plaintiff's farm, the fence was defective, so that cattle could easily pass through and go upon the railroad.

The argument of the appellants' counsel, if I correctly appreciate it, is, that, as there is no statute fixing and defining the height and strength of a division fence, the defendants are absolved from the duty imposed upon them by the general railroad act to erect and maintain fences at all; or, in other words, that the general railroad act does not impose any duty upon the railroad in regard to fencing, because the law does not define the height and strength of a division fence. The whole scheme of our statutes, in regard to division fences, assumes that there is a standard fixed, and it is well known that there is such a standard fixed by the towns generally.

The revised statutes provide that the electors, in town meet-

Tallman *v.* Syracuse, &c. R. R. Co.

ing assembled, may make rules and regulations in regard to this matter in each town. 1 *R. S.* 341, § 5 ; sub. § 11, 4 ed. p. 647.

The plaintiff, I presume, did not go into proof upon this subject, because here were forty rods where there was no fence constructed, and in other places the fence was so radically defective as to afford no obstacle to cattle passing over it. There was no proof made in the case as to any action of the town of Preble prescribing any regulation in regard to division fences,. and yet farms highly cultivated, with division fences, exist all through the town, and the jury who tried this case, I doubt not, were all familiar with the regulations in regard to division fences, as they were all farmers, and had to support and maintain them. Be this as it may. [The learned judge here recapitulated the statute above stated.]

The object of this statute requirement is to prevent these domestic animals from escaping from the adjoining fields upon the railroad track ; and in considering this statute, Judge DENIO said, in the case of Corwin *v.* N. Y. & Erie Railroad Co., 13 *N. Y.* 42, 54, that the design of the statute was " to require the railroad companies to inclose their track with substantial fences." This is, beyond doubt, required of them,— such a fence at least as will turn cattle and horses that are orderly and quiet.

This at least they must do, and the statute requires the fence to be of the height or strength of a division fence required by law, and whenever a case comes where the sufficiency of the fence is placed in doubt in the litigation, then it may become necessary to consult the town ordinance, and see whether the fence meets the requirements. This cannot be necessary where no fence has been built, or where it is so entirely out of repair and proper condition as was this fence. The question whether this fence was sufficient or not, was not raised upon the trial, and there was no error in the charge submitting the case to the jury. The defendants were clearly liable upon the proof, and the judgment should be affirmed.

All the judges present concurred in affirming the judgment.

Judgment affirmed, with costs.