No. 220.

## ENDERS *v.* McDONALD ET AL.

FENCES.—*What is a Lawful Partition Fence.*—Under section 4848, R. S. 1881, which went into force April 13, 1866, a lawful partition fence was one which would enclose and restrain sheep, unless by mutual consent of the parties interested they should agree to build a fence only to restrain or enclose horses, mules, or cattle. The statute did not, by terms, require that the fence should be sufficient to restrain and enclose hogs; neither were they included by implication within the statutory requirements. The word "cattle" in said section is used in its "restricted and limited sense," and applies only to "beasts of the bovine genus." The act of March 9, 1891 (Acts 1891, 399), amended said section so as to make it applicable to hogs.

SAME—*Animal Taken Up as an Estray.— What Owner Must do Before He Can Replevy It.*—Where, prior to the act of March 9, 1891, the lands of the plaintiff and defendant were separated by a partition fence, and a hog belonging to the plaintiff entered the enclosure of the defendant and damaged his wheat, he had the right, in order to indemnify himself against loss, to impound the hog and proceed as in case of an estray, and the plaintiff could not maintain an action for the replevin of the hog until he had complied with the provisions of the statute governing the recovery of estrays.

APPEAL.—*To Appellate Court.—Action Originating Before Justice.—Replevin.* —The provision of the statute forbidding an appeal to the Supreme (Appellate) Court where the action originated before a justice of the peace, and the amount involved, exclusive of interest and costs, was less than fifty dollars does not apply to an action of replevin.

From the Cass Circuit Court.

*J. C. Nelson* and *Q. A. Myers*, for appellant.

*D. D. Dykeman, W. T. Wilson* and *G. C. Taber*, for appellees.

Fox, J.—In this case the appellant, Charles W. Enders, was plaintiff in the court below, and the appellees, Rebecca McDonald, James McDonald and George McDonald, were the defendants.

The record begins with an amended complaint filed by the plaintiff in the ordinary form of replevin wherein it is so claimed that the plaintiff " was the owner and entitled

to the possession of one fine black and white sow of the value of fifty dollars," of which defendants had possession without right. To this complaint the defendants filed an answer in three paragraphs, but subsequently withdrew the first, which was a general denial. Plaintiff demurred severally to the second and third paragraphs of the answer. The court overruled the demurrer to the second paragraph, and sustained it as to the third, thereupon the plaintiff filed a reply to the second paragraph of the answer. To this reply a demurrer was filed, which was sustained. The defendants refused" to further plead " but abided " the decision of the court upon the demurrer," thereupon judgment was rendered in favor of the defendants. Proper exceptions were reserved.

The errors assigned by the appellant in this court are:

1. The court erred in overruling the demurrer to the second paragraph of the defendants' answer.

2. The court erred in sustaining the demurrer to plaintiff's reply.

Counsel for appellant say in their brief that " the only question of law in the case is raised by the second assignment of error." With this admission it will be unnecessary for us to give any attention to the first assignment of error.

The second paragraph of the answer is quite lengthy, but enough of it for our purpose may be substantially stated as follows: At the time the defendants came into possession of the hog in question they say they and the plaintiff were adjoining land-owners ; that their lands were separated by a partition fence ; that they had a twenty acre field upon one side of the fence, in which a crop of wheat was ready to harvest; that upon the other side plaintiff had a pasture field " wherein his hogs were running "; that " the black and white sow " in question " broke through said partition fence into the defendant's wheat field, and injured and destroyed wheat of the value of five dollars "; that upon the same day, and while the hog was in their enclosure, " they took up said

hog and imprisoned it upon their own premises"; that within twenty-four hours they gave the plaintiff notice of what they had done; that upon the next day they had their damages assessed by two disinterested free-holders; that upon the succeeding day while they (the defendants) were proceeding to obtain their remedy for the damage done by said hog, the plaintiff " commenced this suit in replevin."

The plaintiff's reply to this answer alleged that it was true that the hog was his property, and that it escaped from his enclosure into the defendants' wheat field, and was " taken up and impounded " by the defendants, and that they gave him notice, had the damage appraised, and were proceeding in the premises as alleged in the answer, when he commenced the action of replevin, but as a justification the plaintiff alleged in the reply, that he was the tenant of one Zanneman who owned the land upon which he lived; that before the hog entered defendants' wheat field and damaged their wheat, the said Zanneman and the defendants agreed that they should each maintain certain portions of the partition fence dividing their lands; that the place where the said hog entered the defendants' wheat field from his enclosure was in that part of said partition fence that defendants had agreed to build and maintain; that the reason the hog passed through said fence was because the defendants had neglected to maintain a " lawful partition fence " as they had agreed; and that the fence they had built " was not such as to enclose and restrain hogs; that had the defendants maintained a lawful partition fence the hog would not have escaped on to their lands."

The principal questions in the case are: What was a "lawful partition fence " at the time the hog was taken up? What animals was such a fence required to restrain in order to be lawful?

Section 4834, R. S. 1881, went into force on the 6th day of May, 1853, and is as follows:

" 4834. Any structure, hedge, or ditch, in the nature of a

fence, used for purposes of enclosure, which is such as good husbandmen generally keep, and as shall, on the testimony of skilful men, appear to be sufficient, shall be deemed a lawful fence."

Section 4848, before it was amended in 1891, went into force on the 13th day of April, 1866. It provides as follows:

"4848. A lawful partition fence shall, in all cases, be such as to enclose and restrain sheep, unless by mutual consent of the parties interested, they specially agree to build a fence only to restrain or enclose horses, mules, or cattle. Except when otherwise specially agreed, partition fences dividing lands, occupied on both sides, shall be maintained, throughout the year, equally by both parties."

Section 4848 was a modification of section 4834, as far as partition fences were concerned. Prior to its enactment it was necessary that a partition fence should conform to the requirements of section 4834 in order to be lawful. *Hinshaw* v. *Gilpin*, 64 Ind. 116. That is, it was required to be such a fence "as good husbandmen generally keep," and this was to be determined "on the testimony of skilful men." Section 4848, however, prescribed a different rule, and provided a different test for ascertaining when a partition fence was to be considered lawful. The requirement now is, that the fence should "be such as to enclose and restrain sheep," unless the parties interested agreed that it shall only be necessary and sufficient "to restrain or enclose horses, mules or cattle." The restraint and enclosure of sheep was the extreme test required by the statute. Appellant's counsel insist that hogs were by implication included within the statutory requirements. Certain it is, that the statute did not in terms require that a partition fence should be sufficient to restrain and enclose hogs. They were not enumerated in the classes named. Why this was so does not concern the court. It will be presumed that the law-makers in enacting the statute understood the difference between a hog and a

sheep, and that, therefore, the word "hog" was intentionally omitted. Unless changed by statute the common law, requiring the owners of domestic animals to keep them upon their own premises, is in force in this State. *Williams* v. *New Albany, etc., R. R. Co.*, 5 Ind. 111; *Myers* v. *Dodd*, 9 Ind. 290; *Brady* v. *Ball*, 14 Ind. 317; *Pittsburgh, etc., R. W. Co.* v. *Stuart*, 71 Ind. 500.

The statute in question concerning partition fences, being a modification of the common law, was therefore in derogation of it, and being so, its terms will not be enlarged by implication. There was no obscurity or ambiguity in its terms, and for this reason it will be taken to mean exactly what it said. The word "hog" or "swine" was not used in the statute, and this being so the question is presented, did the legislature intend that the provision of the statute should have any application to animals of this species? Were they embraced in any of the terms used? In some instances the word "cattle" has been regarded as a very comprehensive one. In the statute the words sheep, horses, mules and cattle were used. It is very clear that "hogs" are not included in the terms sheep, horses and mules.

In Worcester's Dictionary the word "cattle" is defined to be "a collective name for domestic quadrupeds generally, including not only the bovine tribe, but horses, asses, mules, sheep, goats and swine." This definition seems to have been adopted in *Decatur Bank* v. *St. Louis Bank*, 21 Wal. 299, under the circumstances of that case. In the course of the opinion Justice Davis says: "In its limited sense it is used to designate the different varieties of horned animals, but it is also frequently used with a broader signification as embracing animals in general which serve for food for man. In England, even in a criminal case, where there is a greater strictness of construction than in a civil controversy, pigs were held to be included within the words "any cattle." See collection of authorities in Am. and Eng. Encyc. of Law, under the title "cattle."

In Webster's Dictionary, however, a better definition is given when it is said : " In the United States, in common usage, the word signifies only beasts of the bovine genus, oxen, bulls, cows and their young. In the law respecting domestic beasts, horses, sheep, asses, mules and swine are distinguished from cattle." There is no doubt but that this " is the plain, ordinary and usual sense " in which the word is used in this country. In this sense it has been used, without exception, by the Legislature of this State in the enactment of laws concerning domestic animals. Section 2654, R. S. 1881, prohibits the importation of " infected cattle " into this State. Section 2637 makes persons responsible for driving infected " cattle " along any of the public highways of this State, whereby other " cattle " become infected. In reading these statutes it is evident that the word " cattle," as used therein, was not intended to apply to domestic animals generally, but only to those of the " bovine genius."

In cases where it was the intention of the Legislature to apply the provisions of a statute to different classes of domestic animals, the classes have in every instance, as far as we have observed, been enumerated. Thus, section 1970, R. S. 1881, provides a penalty for altering the mark or brand " of any horse, mare, gelding, foal, filly, jack, mule, ass, sheep, goat, cattle, or hog. So, in section 1971, it is made criminal to administer poison " to any horse, mare, gelding, foal, filly, jack, mule, ass, sheep, goat, cattle, or hog." In the 21st subdivision of section 3106 power is conferred upon cities, as municipal corporations, " to regulate and prohibit the running at large of cattle, horses, fowls, swine, and other animals." So in subdivision 5 of section 3333 power is conferred upon towns " to restrain from running at large cattle, sheep, swine, and other animals." In all these instances it is apparent that the Legislature used the word " cattle " in its " restricted and limited sense," and applied it to " beasts of the bovine genus." This is the true signification of the word as sanctioned by

usage in the United States., Section 2637 gives power to the board of commissioners of a county by " an order entered in the order book of said board," to say what kind of domestic animals shall be allowed to run at large and pasture upon unenclosed lands. Suppose a board of commissioners should provide by a proper order that " only cattle " should be allowed to run at large, would it be contended that the term " cattle," as used. in such a case, would embrace horses, mules, sheep, goats, and hogs? We think it is evident that hogs were not embraced in any of the classes of animals enumerated in the statute in question. We therefore infer that there was some reason for the omission. That. it was the understanding of the Legislature that section 4848, as originally enacted, did not embrace hogs is shown by the fact that on the 9th day of March, 1891, the section was amended and the omission supplied, so that now a partition fence, in order to be lawful, must be one that is " sufficiently tight to hold hogs, sheep, cattle, mules, and horses." Thus, it will be seen that hogs were added to the animals enumerated in the statute. Acts 1891, 399. The court does not judicially know that a partition fence sufficient to " restrain and enclose sheep " will also " restrain and enclose " hogs. It is not so charged in the pleadings in this case as a fact. The statute in question concerning particular fences did not change the common law requiring the owners of domestic animals to keep them within their own enclosures, as far as " hogs " were concerned. In this case the appellant's hog having entered the enclosure of the appellee and damaged their wheat, they had the right, in order to indemnify themselves against loss, to impound the hog and proceed as in case of an estray. This right was given them by the statute. This, it is admitted, they were doing when the appellant took the animal from their possession. This he had no right to do without a compliance with the provisions of the statute in such cases provided.

Objection is also made that this court has no jurisdiction

of the case, for the reason that the amount involved was less than fifty dollars, the action having been commenced before a justice of the peace. This being an action of replevin, the rule invoked by counsel has no application. *Hall* v. *Durham*, 113 Ind. 327.

The judgment is affirmed, with costs.

Filed Oct. 14, 1892.