Judgment reversed. Order to be settled on notice.

---

ABRAM BELL, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Second Department, June 21, 1918.

**Railroads — negligence — injury to cattle straying upon railroad tracks — covenant of plaintiff's lessor to erect and maintain fences — when defendant railroad cannot be charged with negligence, or gross negligence — failure to stop train or slacken speed on discovering cattle upon track.**

A plaintiff whose cattle were injured by a train of the defendant while straying upon the defendant's roadbed cannot recover upon the ground that the defendant was negligent in not erecting and maintaining fences along its right of way as required by the statute where, as a matter of fact, the plaintiff's lessor, pursuant to a covenant with the defendant, bound himself to erect and maintain a suitable fence on either side of the railroad and the plaintiff's cattle broke through the fence which the lessor had erected. This, whether the covenant was made before or subsequent to the enactment of the statute, so long as the covenant brought about the erection and maintenance of the fence contemplated by the statute

Under the circumstances the railroad company was not required by the statute to erect and maintain a second and superfluous fence.

The covenant of the plaintiff's lessor ran with the land and is binding upon him and is a defense available to the defendant.

The liability of the defendant railroad was not enlarged by the amendment to section 44 of chapter 140 of the Laws of 1850 made by section 8 of chapter 282 of the Laws of 1854, which provides for liability for damages to " any " cattle, horses, sheep or hogs, nor did said amendment rob the defendant of any rights which accrued to it perforce the covenant aforesaid.

As the plaintiff's cattle broke through the fence which the plaintiff's lessor had covenanted to maintain, they were estrays and trespassers, and the defendant cannot be held to be wantonly and grossly negligent in not stopping or attempting to stop or slacken the speed of the train when the cows were observed on the track by the engineer.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rockland on the 15th day of January, 1918, upon the decision of the court after a trial at the Rockland Special Term.

*Elbert N. Oakes* [*Thomas Watts* and *John Bright* with him on the brief], for the appellant.

*E. W. Hofstatter,* for the respondent.

JENKS, P. J.:

The court found the facts as " stipulated," and concluded that the defendant was liable because it was " negligent " (1) " in not erecting and maintaining fences along its right of way, according to law," and (2) " wantonly and grossly negligent in not stopping or attempting to stop or slacken the speed of its train when the cows were observed on the track by the engineer operating the train, in order to avoid striking them." I think that the proof did not justify either conclusion.

1. The proof shows that at the time of the casualty there was a fence, for the agreed facts are that from plaintiff's pasture lot two cows belonging to plaintiff " broke through the fence which separates the said pasture lot from the right of way of defendant's said railroad, and upon breaking through

said fence " passed directly from said pasture, etc. The theory of the court, shown by its third conclusion of law, is that inasmuch as the defendant or its predecessor did not *directly* erect the fence, there was in the eye of the law no fence. The stipulated facts establish that the predecessors of plaintiff's lessor by covenant bound themselves, their heirs and assigns, to the defendant's predecessor, to construct and to maintain a suitable fence on either side of the railroad. There is no question but that the fence was erected and maintained perforce of this covenant. But, nevertheless, the learned court held that the defendant was not relieved of its statutory duty of fencing because the said covenant was made prior to the enactment of the statute that cast the general duty of fencing upon railroad corporations. It seems to me immaterial whether the covenant was made before or subsequent to the statute, provided the covenant brought about the erection and maintenance of a fence contemplated by the statute. Thus in *Corwin* v. *New York & Erie Railroad Co.* (13 N. Y. 42), Gregory, the owner of the land, had covenanted in his deed of conveyance of the right of way to the railroad company, to make and forever maintain all necessary fences, as in the case at bar; and the court say: " It must be borne in mind that the statute imposes the duty generally upon the railroad company, to erect and maintain the fence; and the public and individuals have a right to hold the company responsible for the performance of this duty. *If Gregory had erected and maintained the fence, this would have satisfied the statute, as the railroad company would have caused the erection of the fence;* but until the fence was erected, the company remained liable for the omission." To hold that although a railroad company had caused the erection and maintenance of a fence, yet it had not satisfied the statute, is tantamount to holding that the railroad company must erect and maintain a second fence and a superfluous one. The covenants in *Duffy* v. *New York & Harlem R. Co.* (2 Hilt. 496) and in *Talmadge* v. *Rensselaer & Saratoga Railroad Co.* (13 Barb. 493) were made respectively prior to the enactment of the statute.

The covenant ran with the land. (*Satterly* v. *Erie Railroad Co.*, 113 App. Div. 462; cited in *Miller* v. *Clary*, 210 N. Y.

134.) It was binding upon this plaintiff. (*Duffy* v. *N. Y. & Harlem R. R. Co., supra,* and cases cited; *Indianapolis, Pittsburgh & Cleveland R. Co.* v. *Petty,* 25 Ind. 413; *Clayton* v. *Great Western Ry. Co.,* 23 U. C. C. P. 137; S. & R. Neg. [6th ed.] § 443.) I am of opinion that the covenant was available as " a good answer to the action." (*Corwin* v. *New York & Erie Railroad Co.,* 13 N. Y. 42; *Satterly* v. *Erie Railroad Co.,* 113 App. Div. 462, and cases cited.) This plaintiff was of status like that of Gregory in *Corwin* v. *New York & Erie Railroad Co. (supra),* where the court said: " Had Gregory's cattle entered upon the road from his land, by reason of there being no fence, and been injured, his covenant would have been a good answer to the action." The only points of difference with respect to the covenant between *Corwin's* case and the case at bar are that the covenant in the case at bar had caused the erection of a fence, and that the cattle were not those of the original covenantor, but of him who stood in the shoes of the covenantor. *Shepard* v. *Buffalo, N. Y. & Erie R. R. Co.* (35 N. Y. 641), cited by the respondent, may be discriminated in that the covenant, so far as the plaintiff was concerned, was one of release, and the court said: " There is nothing in the deed which requires the grantor to erect any fence," and further that the covenant was not " with this defendant, nor is this defendant an assignee thereof, or in any manner privy to it."

The learned trial court also concluded that by the amendment to section 44 of chapter 140 of the Laws of 1850, by section 8 of chapter 282 of the Laws of 1854, whereby the word " any " was placed before " domestic animals," the Legislature clearly intended that railroad companies " should be liable for damage to domestic animals whenever caused, by reason of their failure to comply with the statute." But for reasons heretofore stated, this defendant had complied with the statute in that it had caused the erection of the fence. The statute as amended provided liability for damages to " *any* cattle, horses, *sheep or hogs.*" (Laws of 1854, chap. 282, § 8.) This amendment neither directly nor impliedly requires the conclusion that thereby the defendant was stripped of any right that accrued to it perforce of the covenant for the erection and maintenance

of the fence. The term " cattle " may apply to animals of
the bovine kind alone, and it is also a collective name for
domestic quadrupeds generally. (*Decatur Bank* v. *St. Louis
Bank*, 88 U. S. [21 Wall.] 299.) It has been said that in the con-
struction of fencing statutes it seems generally, but not uni-
formly, to have been held that the word applies to all domestic
quadrupeds. (See *Frink's Admr.* v. *Brotherhood Accident Co.*,
75 Vt. 251, noting *Enders* v. *McDonald*, 5 Ind. App. 297.) In
our statute before amendment, the word " cattle " was not
used as a term for all quadrupeds, because "horses, or other
animals" were also specifically enumerated. If that word was
used in its limited or specific sense, it was broadened by the
term " any," as were its associated words also. (*United States*
v. *Palmer*, 16 U. S. [3 Wheat.] 610.) But even if this amend-
ment by the word "any" implies domestic animals of *any one*,
reason for the amendment may be found in the fact that in
some States, and among them Maine, New Hampshire, Ver-
mont and Massachusetts, fencing statutes have been con-
strued only for the benefit of owners or occupants of adjoining
lands or owners of animals lawfully upon that land. (2 S. &
R. Neg. [6th ed. Street] § 449.)

The grievance of the plaintiff cannot rest upon the absence
of a fence. It cannot rest upon failure of maintenance in
that it was so defective that the cattle broke through it.
(1 Thomas Neg. [2d ed.] 1046, citing *inter alia*, *Neversorry*
v. *Duluth, etc., Ry. Co.*, 115 Mich. 146.)

2. I think that the defendant was not " wantonly and
grossly negligent in not stopping or attempting to stop or
slacken the speed of its train when the cows were observed
on the track by the engineer operating the train, in order to
avoid striking them." The conduct of the engineer should
not have been considered, if it was so considered, as if he was
working his train along the right of way unfenced from the
pasture land of the plaintiff. The engineer's conduct must
be considered as that of one who in the daytime was working
his passenger train at the rate of 20 or 25 miles an hour
through rural territory — pasture lands which were sepa-
rated by a fence from the right of way; and who had the
right to approach that territory with the presumption that
the fence would serve its purpose and the track would be clear

at that point from estrays from that pasture land. (See *Mears v. C. & N. W. Ry. Co.*, 103 Iowa, 203; *Illinois Central R. Co. v. Noble*, 142 Ill. 578.) The safety of the passengers in the train was paramount. (1 Thomas Neg. [2d ed.] 1024, and cases cited.)

The animals were estrays and trespassers, and the defendant was under no obligation to be vigilant and cautious in running its train with a view not to injure any cattle which might come within its inclosure without any neglect. or breach of duty on its part. (*Boyle v. New York, L. E. & W. R. R. Co.*, 39 Hun, 171, 173; affd., 115 N. Y. 636.) It does not appear that the defendant's engineer ever observed the cattle. All of the evidence bearing upon this feature of the case is that it was daytime, that the place where the cattle were killed was visible for 700 feet as the train approached that place, and that the engineer blew his whistle. If it may be inferred from the whistling that the engineer did see the cattle, there is still no indication of the point where he saw them and consequently whether he could have then stopped or slackened his train so as to avoid collision. Negligence cannot be imputed to the engineer upon the theory that he should have seen the cattle, because that involves the proposition that his duty was to be on the lookout for cattle at this point so that he could have seen them the instant that he came into the field of view of 700 feet, or at least at such a time thereafter that before his train traveled the 700 feet he could have stopped or slackened his train so as to avoid collision. Even if we assume that, beyond justification of the facts, the engineer could be said to be careless and negligent in working his train after the cows were observed by him, or should have been observed, such conduct would not have justified this judgment, for the element of willfulness or wantonness in the working of the train is entirely absent, and yet that element is essential. (*Boyle v. New York, L. E. & W. R. R. Co., supra,* 173; *Magilton v. N. Y. C. & H. R. R. R. Co.*, 82 Hun, 308; 2 S. & R. Neg. *supra*, § 428.)

The engineer did blow his whistle. And in *Boyle's Case* (*supra*) the court, per BARKER, J., say: " The usual and ordinary means adopted to drive cattle from the tracks is the noise of the train and the sounding of the whistle or bell,

and such signals are generally sufficient for that purpose without checking the speed of the train. (*Bemis* v. *Railroad,* 42 Vt. 381.) We are not aware of any rule of law that requires a railroad company to do more with a view to avoiding injury to cattle trespassing upon its tracks," citing *Maynard* v. *Boston & Maine R. R. Co.* (115 Mass. 458); *Darling* v. *Boston & Albany R. R.* (121 id. 118), and other cases.

The conclusions of law are all disapproved, and in place thereof it is concluded that the defendant was relieved perforce of the covenant from its statutory duty of fencing; that the covenant was available as a good defense; and that the defendant was not chargeable with any negligence whereby it could be held liable to the plaintiff for the killing of the two cows. The judgment should be reversed and the complaint dismissed, with costs.

MILLS and BLACKMAR, JJ., concurred; THOMAS, J., concurred in the result; PUTNAM, J., voted to reverse, and for a new trial, on the ground that the facts stipulated did not support the conclusion of the trial court. Let the defendant submit findings within ten days, and the order will be entered accordingly.

The conclusions of law are all disapproved, and in place thereof it is concluded that the defendant was relieved perforce of the covenant from its statutory duty of fencing; that the covenant was available as a good defense; and that the defendant was not chargeable with any negligence whereby it could be held liable to the plaintiff for the killing of the two cows. The judgment is reversed and the complaint dismissed, with costs.