JAMES G. SHEPARD, Respondent, v. THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, Appellant.

The railroad act of 1850, as amended in 1854, was passed from public consider ations. Its purpose was to protect the traveling public as well as farmers along the lines of their roads.

Under the provisions of that act, railroad companies are required to fence both sides of their track, and are liable for damages done to cattle so long as such fences are not made and kept in good order.

It is no defense that the party whose cattle were killed was legally bound to build such fence, under a covenant between his assignor and the company. It was the duty of the company to see the fence built, and failing in that they are liable.

PLAINTIFF brought an action for the value of five cattle, killed in November, 1856, by defendant's cars, on its road. The injury was proved, and the justice at the trial dismissed the complaint on the ground that the plaintiff's negligence in pasturing his cattle in fields not separated from defendant's road, by a substantial inclosure, contributed to the injury. The plaintiff appealed to the General Term in the eighth district, where the judgment of the Special Term was reversed, and from the judgment of the General Term the defendant appeals to this court.

*W. F. Cogswell*, for the plaintiff.

*A. P. Laning*, for the defendant.

PECKHAM, J.   It appeared, on the trial of this cause, that the roadway of the defendant, and also of the New York Central, ran through plaintiff's farm, side by side, each of the width of fifty feet. The roads adjoined each other, the west line of defendant's road abutting upon and forming the east line of the Central. That the outside or east line of the defendant's road was always properly fenced with suitable cattle guards, at the highway and farm crossings, but there were neither cattle guards or fences on the west line, nor, in fact, on either line of the Central, the fence once built, on its west line, having been destroyed, and the cattle

guards filled up.   No fence had ever been built on its east line. The plaintiff's cattle were pastured on his meadow, adjoining the Central road on the west, and the plaintiff knew that there were no fences, except as stated.   From this meadow the cattle strayed across the Central on to defendant's road, and were killed.   The justice found all these facts, and that the damage sustained was $150.   The Central road, along there, was formerly the Tonawanda railroad.   On the 20th of August, 1842, Josiah Newman, a prior owner of plaintiff's farm, granted to the Tonawanda road its roadway, and "for himself, his heirs, executors and assigns, covenanted and agreed to, and thereby did, release, discharge, and forever acquit said road, its successors and assigns, of and from any and all liability which they now are, or forever hereafter may be under, to erect, maintain or keep in repair, any fence or fences along the line of said railroad."

On the 4th of January, 1857, the plaintiff granted to the defendant a roadway through his farm, and in the deed thereof it was provided as follows : "Said party of the second part (the road) is to erect and maintain a fence upon the easterly line of the lands above described, of the height and strength of a division fence as required by law."

It is insisted, on the part of the defense, that the plaintiff was bound by the covenants in the deed of his grantor to the Tonawanda railroad.   That those covenants run with the land, and were "a perpetual release to that road and to its 'successors and assigns' from all obligation to build any fence on the line."

Assuming that these covenants did run with the land, as they probably did (*Norman* v. *Wells*, 17 Wend., 136), they were made in 1842, prior to the passage of the act requiring railroads to fence on both sides of their roadway. (3 Statutes at Large by Edmonds, 635, § 44, enacted in 1840.)

This covenant must, therefore, be construed in reference to the rights of the parties and their liabilities as then existing. The Tonawanda railroad, as the proprietor of adjoining land, was not bound, under the then statutes, to make all the fence on both sides of the road, but to make and maintain one-half

of the partition or division fences.   From this obligation, that road was released, and so was its assignee, the Central road. Therefore, neither the Tonawanda road, nor its assignee, the Central, was bound to make or maintain any part of a division fence.   But, suppose the owner of the farm who made this covenant chose to let his land lie open (1 Statutes at Large by Edmonds, 326, § 1), as he may, could the railroad company compel him to erect fences on both or either side of the railroad under a simple covenant, releasing the company from their erection?   Clearly not.

There is nothing in the deed which requires the grantor to erect any fence.   The plaintiff, therefore, is not within the provision of the act which requires " an owner of land adjoining any railroad who or whose grantor has received a specific sum for fencing along the line of land taken for the purpose of said railroad, and who has agreed to build a lawful fence on the line of said railroad, to build and maintain " the same ; and, in case of neglect, the railroad may build and maintain it at his expense. (1 Statute at Large by Edmonds, § 9, Laws of 1854.)   The railroad act of 1850 and the act as amended in 1854, section 8, makes the railroad company liable for damages done to cattle, &c., so long as the fences, &c., shall not be made and when not in good order."

I do not perceive that the plaintiff's grantor has in any manner released the railroad from any obligations or liabilities imposed by that act.   The parties could not have had that act in view, as it was not in existence when the covenants were made, and they did not qualify its obligations.

The act was passed from public considerations.   Its purpose was to give protection to the traveling public, as well as redress to farmers contiguous to the road. (Corwin v. New York Central Railroad Company, 13 N. Y., 42, opinion of. DENIO J.)   So that if the covenant under consideration related to the defendant's road instead of a road outside and adjoining, I do not think it would have been a defense.

But it was not a covenant with this defendant, nor is this defendant an assignee thereof, or in any manner privy to it.

How, then, can the defendant claim its benefits?

If it were a defense to the Tonawanda or Central railroad, it does not seem to follow that it would also shield the defendant under the circumstances of this case.

But it is said the plaintiff was guilty of negligence in turning his cattle into his meadow when he knew the railroads were not fenced, and hence they could stray thereon and be injured. His negligence, therefore, contributed to the injury, and he cannot recover upon this ground. The complaint was dismissed.

If this be true, then the railroads need never fence their roads so far as respects adjoining owners. Landowners could not, of course, occupy their lands adjoining railroads, but must pasture their horses, cattle, sheep and hogs on some other farm unless they volunteer to discharge the duties which the statutes impose upon the roads. This cannot be law, such a construction was never intended by the legislature. It virtually nullifies the act. It is not negligence within the meaning of the rule for an owner to pasture his cattle on his own farm, because a railroad fails to discharge its statutory duty, and fence its road. Such a construction as that adopted at the circuit, not virtually but entirely nullifies the act so as regards any protection or relief to farmers adjoining the railroads.

If the railroad neglects to keep the fences in repair, it may be urged that a farmer with ordinary diligence will know it and send his cattle off from his farm, otherwise, if injured, he can have no redress; or, plainer still, if the railroad not partially performs, but wholly omits its duty and makes no fence at all, then of course the adjoining owner will know it and should abandon his farm as to his cattle, as if they are killed the willful refusal or neglect of the railroad to perform its statutory duty is its absolute defense.

The legislature in declaring the absolute liability of the railroad for all such damages when it omitted to make the required fence, did not intend any such contradiction or qualification, and never would have passed a statute requiring an owner to abandon the ordinary use of his farm because of the railroad's neglect to do its duty, or if he should use it in

an ordinary farmerlike way, he must lose his cattle, without redress, if killed by the railroad's neglect. The damages resulting to an owner of a farm from this construction of the statute contended for, I think, were never considered or allowed to him when the railroad obtained the road way. But it was always assumed that he might continue to occupy his farm substantially as before. The statute does not authorize the owner himself to make the fence, if the railroad neglect or refuse, and recover of the road therefor; but the legislature obviously intended to put that whole duty upon the railroad. Hence they enacted that if the adjoining owner who has received compensation for making the fence neglects to do it, the railroad "shall build and thereafter maintain such fence," and may recover of the owner the expense thereof. (§ 9 of railroad act as amended in 1854.) Hence, if the statute declaring that railroads, failing to make and maintain the fences, &c., required, shall be liable for damages done to cattle, &c., thereon, it nad been proposed to add, provided the owners shall not keep or pasture their cattle, horses, sheep or hogs on any farm adjoining such railroad, so neglecting to make the required fence, I think we may safely say the provision would never have been enacted. It is not well, therefore, to add it by construction. As to this branch of the case then, I am of opinion, first, that pasturing cattle, &c., on a farm contiguous to a railroad cannot be regarded as negligence, though the company has neglected to make the fence required by law.

Second. I think the company cannot be allowed to set up that negligence, if it may be so termed, when it has itself omitted to fulfill the requirements of the statute; it should not be permitted to set up its own violation of a statute duty, as a basis of charging negligence upon others. Besides, this objection, I think, is substantially disposed of on the authority of this court. (*Corwin* v. *New York and Erie Railroad Company*, 13 N. Y., 42.)

This, of course, does not authorize a recovery where an owner has voluntarily and purposely incurred the damage.

It is also insisted that the act of 1854, section 8, exempts defendant from making or maintaining a fence on its west line, where another railroad adjoins it, as in the case at bar. The act declares that "no railroad corporation shall be required to fence the sides of its roads except where such fence is necessary to prevent horses, &c., from getting on to the track of the railroad from the lands adjoining the same."

The plain answer would seem to be that it was necessary in the case at bar, as the facts proved. It is nowhere enacted that one railroad may rely upon another to erect a fence, or to contract for such fence. But each one, upon its own responsibility, must discharge its own obligations. Had the Central road properly discharged its duty, and erected a fence along either line of its road, it is highly probable, and may be conceded, that this loss would not have occurred. That is no defense to this road. There are some reasons why each road should fence for itself, though they do run side by side. The legislature may enact otherwise; but as the law now stands, we think that each road must see to it, at its peril, that the necessary fence is made.

The statute quoted was probably aimed at rivers or lakes, through whose borders the railroads might run, and where a fence would be unnecessary; or in other cases, where high rocks or other obstructions would render it unnecessary to fence against the invasion of cattle. It is also urged that, by accepting from the defendant a covenant to fence the east side of its road, the plaintiff virtually discharged it from all obligations to fence the other side.

This is decided otherwise. (*Pohler* v. *New York Central Railroad*, 16 N. Y., 476.)

All the judges concurring,

Judgment affirmed.