DANIEL DOLAN et al., Respondents, *v.* THE NEWBURGH, DUTCH-  *126-369.*
    ESS AND CONNECTICUT RAILROAD COMPANY, Appellant.

The provisions of the General Railroad Act (Chap. 140, Laws of 1850, as
amended by § 8, chap. 282, Laws of 1854) requiring railroad corpora-
tions to construct and maintain fences on the sides of their roads, and
making them, in case of failure so to do, liable for damages to any cat-
tle, horses, etc., thereon, does not require such a corporation to indem-
nify the owner of a team, who has voluntarily driven it on the lands of
the corporation and has negligently permitted it to escape onto the
track, in front of a moving train.

Defendants road, at a point where it runs east and west, was constructed
on a strip of land in front of a grist-mill on the south side of the track,
which strip was conveyed to it by the then owners of the mill property
for a right of way. The platform of the mill was four feet ten inches
south of the south line of the strip. The only approach to the mill was
by a lane leading from a highway north of the track, which lane crossed
the track and terminated at the mill. Teams, in approaching the mill,
and while standing at the platform, occupy part of the strip. East and
west of the mill and on the north side of the road, except where the lane
crosses it, it is fenced. The conveyance to defendant contained a
covenant, on defendant's part, to leave the land opposite the mill
unfenced, so as to permit free passage to and from it. Plaintiffs'
agent drove their team to the mill and left it standing unattended
at the platform and partly on the strip. The horses escaped, ran upon
the railroad tracks, and were killed by a passing train. In an action,
under said statutory provision, to recover the damages, *held* (VANN.
BRADLEY and BROWN, JJ., dissenting), that the court erred in refusing
to hold that, under the exception contained in said provision, which
declares that "no railroad corporation shall be required to fence the
sides of its roads except when such fence is necessary to protect horses,
cattle, sheep and hogs from going onto the track of the railroad from
the lands adjoining the same," defendant was not required to fence its
road at the point in question.

All trains permitted by a railroad corporation to run upon its road,
while it is in full possession, are to be treated as its trains for the pur-
pose of enforcing the statutory penalty for operating the road before it
is properly fenced.

Accordingly, *held*, that the fact that defendant had granted to another
railroad company the right to run trains upon its road and that the engine
which did the injury belonged to such other company, was no defense.

*Ditchett* v. *S. D. & P. M. R. R. Co.* (67 N. Y. 425); *Knight* v. *N. Y., L. E.
& W. R. R. Co.* (99 N. Y. 25), distinguished.

(Argued April 28, 1890; decided June 17, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 13, 1887, which affirmed a judgment in favor of the plaintiffs entered upon a verdict directed by the court.

This action was brought to recover damages from the defendant on account of its failure to fence its track as required by law, whereby, as it is alleged, two horses belonging to the plaintiffs were run over and killed by a train of cars, operated by the New York and New England Railroad Company, while running upon said track pursuant to a contract for the joint use of the same by the two companies.

At the point where the accident happened, near Brinkerhoffville, Dutchess county, the general direction of the defendant's track is east and west. There was a grist-mill directly south of the track, between fifty and sixty feet therefrom, at the locality in question. The only way of reaching the mill, except by crossing private property, was by a lane leading from a highway at the north and terminating at the mill after crossing the track a little to the east thereof. On the 25th of September, 1886, said horses, hitched to a wagon loaded with grain in bags, were driven by plaintiffs' agent across the track to the door of the mill fronting the railroad, which was fenced on the north and partially on the south, but there was no fence between the mill and the track. After the wagon was unloaded, as the miller was busy, the agent of the plaintiffs stepped across the threshold of the mill to get the empty bags, leaving the team loose. At that instant a west-bound freight train belonging to the New York and New England road came suddenly from behind another train standing upon a side track and frightened the horses, which ran west, and, turning to the north, went upon the track in front of the moving engine and were killed. If there had been a fence upon the south side of the railroad in front of the mill they could not have gone upon the track. In 1868 the former owner of the mill property conveyed a strip of land in front thereof to the defendant for a right of way, and its railroad was subsequently built thereon. The deed contained a covenant on the part of

the railroad company that the land so conveyed, or so much thereof as the grantors should elect, should "forever remain unenclosed so that the parties of the first part, their heirs and assigns, and all persons whom they may desire to have to do so, may pass and repass over said railroad and lands of said company to and from their mill and other buildings of parties of the first part, their heirs and assigns."

Further facts appear in the opinions.

*Milton A. Fowler* for appellant. The liability, if any, is purely statutory. The statute is penal, cuts off the defense of contributory negligence, and, like all penal statutes, is to be strictly construed. (*Knight* v. *N. Y., L. E. & W. R. R. Co.*, 99 N. Y. 25, 28.) The railroad was fenced within the terms of the statute. It does not provide for a literal fence or a fence in all places, but only at those places where it is necessary to prevent stock from getting on the track from the adjoining lands. (*Ditchett* v. *S. D. & P. M. R. R. Co.*, 67 N. Y. 425, 428.) The principle is well established that liability under the statute only arises when stock stray on the track of their own volition. (*Corwin* v. *N. Y. & E. R. R. Co.*, 13 N. Y. 42, 49, 54; *Shepard* v. *B., N. Y. & E. R. R. Co.*, 35 id. 641, 645; *Weltz* v. *I. & V. R. R. Co.*, 2 West. Rep. 651.) The owner of the land who has covenanted that no fence shall be built is estopped from claiming damages. (*Duffy* v. *N. Y & H. R. R. Co.*, 2 Hilt. 496, 499.)

*O. D. M. Baker* for respondent. Defendant is liable for the value of the horses by reason of its deliberate neglect and refusal to comply with, and its evasion of, the statute as to fencing its road at this place. (Laws of 1854, chap. 282, § 8; Laws of 1850, chap. 140; 3 Edm. Stat. 644; 3 R. S. [8th ed.] 1778.) The engine was upon the track with defendant's consent, and not as a trespasser. Defendant was receiving a pecuniary benefit for its being there, and is liable to plaintiffs for the damages resulting from such use. (*Bissell* v. *N. S & N. I. R. R. Co.*, 22 N. Y. 306.) For the purposes

of this action the engine was an "agent" of the defendant, and defendant is liable for injuries of the character complained of here, caused by it. (*Knight* v. *N. Y., L. E. & W. R. R. Co.*, 99 N. Y. 29; *Parker* v. *R. & S. R. R. Co.*, 16 Barb. 315; *Corwin* v. *N. Y. & E. R. R. Co.*, 13 N. Y. 49.) There must be a fence or a substitute for one between the track and "the lands adjoining the same." (*Shepard* v. *B., N. Y. & E. R., R. Co.*, 35 N. Y. 646.) There was no contributory negligence. (*Brady* v. *R. & S. R. R. Co.*, 1 Hun, 378; *Ivory* v. *Town of Deerpark*, 115 N. Y. 476.) The statute does not make the liability of the company conditional or dependent upon absence of negligence by the animal owner. (*Waldron* v. *R. & S. R. R. Co.*, 8 Barb. 390; *Corwin* v. *N. Y. & E. R. R. Co.*, 13 N. Y. 54; *Bradley* v. *N. Y. &. E. R. R. Co.*, 34 id. 427; *Shepard* v. *N. Y. & E. R. R. Co.*, 35 id. 641; *Tracy* v. *T. & B. R. R. Co.*, 38 id. 433; *Brady* v. *R. & S. R. R. Co.*, 1 Hun, 378; *Rhodes* v. *U. I. & E. R. R. Co.*, 5 id. 344; *Spenner* v. *N. Y. C. & H. R. R. R. Co.*, 6 id. 600; 67 N. Y. 153; *White* v. *U. & B. R. R. R. Co.*, 15 Hun, 333; *Corwin Case*, 13 N. Y. 51; *Spencer* v. *N. Y. C. & H. R. R. R. Co.*, 2 Hun, 421; *Thurber* v. *H. B. & F. R. R. Co.*, 60 N. Y. 30; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 466.) The corporation owning the road and neglecting to fence was liable, although the horses were killed by the engine of a lessee or licensee. (*Fontaine* v. *S. P. R. R. Co.*, 54 Cal. 645; 24 Kan. 619; *S. & N. A. R. R. Co.* v. *Pilgreen*, 62 Ala. 305; *I. C. R. R. Co.* v. *Kanouse*, 39 Ill. 272; *T. P. & W. R. Co.* v. *Rumbold*, 40 id. 143; *E. S. L. & C. R. Co.* v. *Gerber*, 82 id. 632.)

FOLLETT, Ch. J. The mill stands fifty-nine feet, four and one-half inches south of the center line of the railroad. Five feet of the space between the mill and the land of the railroad is occupied by a platform in front of the mill, which is ten feet long and about as high as the top of a wagon. The boundary line between the mill property and the railroad land is but four feet and ten inches north of the north edge of the

platform. Teams, in approaching the mill and while standing at it, occupy a part of the right of way of the railroad. East and west of the mill and on the south side of the railroad it is fenced, and it is fenced on its north side, except where the lane which leads to the mill crosses the track. When the right of way was granted from the mill property its owner bound the railroad to leave its land opposite his mill unfenced so as to permit free passage to and from it. This mill was about 150 feet west of the freight depot and the railroad land in front of it may be said to form an extension of the station grounds. This being the situation, the agent of the owners of the team drove it on this strip of land, stopped in front of the mill and there left it standing, partly on the land belonging to the owners of the mill and partly on that of the railroad corporation, for the purpose of delivering a load of wheat. The driver left the team so standing unattended and it escaped upon the railroad tracks and the horses were killed. The railroad corporation permitted its land to be used as a way for the owner of the mill and his patrons to go to and from it, of which privilege the plaintiffs were in the act of availing themselves when their team was killed. To hold that the fencing statute was designed to prevent the owners of a team from voluntarily driving it onto the lands of the corporation, or being so on, to compel the corporation to indemnify its owners for the loss occasioned by the negligence of their agent in permitting the team to escape onto the track in front of a moving train, is to give the statute an effect not contemplated by its authors and not thought of, I think, heretofore.

Many places adjacent to railroad stations, which are not highways nor strictly station grounds, are necessarily left unfenced for the accommodation of the adjoining owners and the public; and to hold that, in all such cases, a railroad is absolutely liable for an injury sustained by teams which enter on the track while in the care of their drivers, without regard to the question of the negligence of their owners or drivers, is to impose an unreasonable liability on the roads, and one altogether foreign to the purposes of the statute.

The court erred in refusing to hold that the railroad was not required to fence its road at this point within section 8 of chapter 282 of the Laws of 1854, which provides: " But no railroad corporation shall be required to fence the sides of its roads except when such fence is necessary to protect horses, cattle, sheep and hogs from going onto the track of the railroad from the lands adjoining the same."

I am unable to concur in the reasoning that the escape of this team onto the railroad land proves that a fence was necessary to protect horses from getting on the track from lands adjoining the same. If this conclusion follows from the facts in this case it is difficult to see why the injury of a team by a collision with a moving train at points other than at highway or farm crossings will not always amount to *proof* that a fence was required by the statute.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Haight, J. I concur in the opinion of the chief judge and desire to add the following considerations. Had the mill stood upon the line of the defendant's right of way, there could be no question but that it would serve the purpose and be regarded as an ample fence, and the fact that it stands back from the railroad lands four feet and ten inches does not materially change the situation.

If the plaintiffs or their agent had driven their teams in by the side of the track wholly upon the railroad lands and the horses had escaped upon the track and been killed, it could not be said that they had escaped from lands adjoining the railroad lands or that a fence on the line of the right of way would have afforded any protection. The escape in question was partially from the railroad lands; it was from a point between the platform of the mill and the railroad tracks, and, whilst one of the horses may have stood on land adjoining the defendant's right of way, it does not appear to me as materially changing the situation. A fence would not have afforded a protection to the team, it only would have prevented the

plaintiffs' agent· from driving so close to the platform of the mill and forced him to drive in wholly upon the railroad lands.

Vann, J. (dissenting). The only exception that presents any question for discussion was taken by the defendant to the denial of its motion to nonsuit made at the close of the evidence. That motion was based upon the following grounds: 1. That the engine which struck the team did not belong to the defendant, but to the New York and New England Railroad Company, "which had a joint right with the defendant and was jointly liable, if anybody was liable, to see that there were fences there before they had a right to run an engine over this railroad track." 2. That the railroad is substantially fenced upon the side from which the team came, and there is no requirement in the statute that the fence should be on the line distinctly between the adjoining owner and the railroad, but it may be upon any line which answers the purpose. 3. That the driver of the team was guilty of contributory negligence. 4. That the owner of the land, having required a covenant from the defendant that the place should be left open, would have no right of action if his own stock went ·upon the track from the adjoining land, and his licensees, or all people who came to his mill, stand in the same position that he would.

The statute requires that "every railroad corporation whose line of road is open for use shall, within three months after the passage of this act, and every railroad company formed or to be formed, but whose lines are not opened for use, shall, before the lines of such railroad are opened, erect and thereafter maintain fences on the sides of their roads; * * * and so long as such fences * * * shall not be made, and, when not in good repair, such railroad corporation and its agents shall be liable for damages which shall be done by the agents or engines of any such corporation to any cattle, horses, sheep or hogs thereon ; and when such fences * * * shall have been duly made, and shall be kept in good repair, such railroad corporation shall not be liable for any such dam-

ages unless negligently and willfully done." (Laws of 1850, chap. 140, § 44, as amended by Laws of 1854, chap. 282, § 8.)

The learned counsel for the defendant says, in his points, that "the statute is penal and cuts off the defense of contributory negligence," so that we are relieved from the duty of examining the case with reference to the subject of negligence on the part of the driver of the team. The substantial question, therefore, is whether the defendant is liable, inasmuch as the injury was inflicted by an engine that did not actually belong to it.

By a written agreement between the two railroad companies, the New England road was allowed " to run freight and passenger trains upon the tracks of the railroad " belonging to the defendant, which covenanted " to keep its said railroad, so to be used by the parties hereto jointly, in good and proper order for the safe operation thereof by both parties." The New England road agreed to pay a stipulated sum annually " for the use of said track," and that its trains should be " run, operated and controlled according to the time tables, rules and regulations of " the defendant.

It is evident, from these provisions, that this case does not come within *Ditchett* v. *S. D. & P. M. R. R. Co.* (67 N. Y. 425), because the defendant and lessor in that case had parted with the possession and control of the road and its appurtenances for the term of ninety-nine years, and the lessee had covenanted to see that the demised property was properly cared for. At the date of the lease the fence was in good condition, but a section thereof fell down after the lessee took possession.

In this case the New England road had neither possession nor control of the railroad, but simply a right of passage for its trains, subject to the rules and regulations of the defendant, which had never built a fence at the point in question, although it was organized in 1867.

It has been held that to create a liability under the statute there must be some action on the part of the corporation, by its mechanical or other agents, producing the injury, and,

hence, that there is no liability for the value of a colt, which, although it went upon the track because the fence was down, was not injured by a train, but by falling into the open spaces between the ties of a bridge. (*Knight* v. *N. Y., L. E. & W. R. R. Co.*, 99 N. Y. 25.) That case has no application to this, as the plaintiffs' horses were killed by an engine; but whose engine was it in the eye of the law, considering the circumstances and the evils that the legislature intended to prevent? If a railroad company should use a borrowed engine, could it escape liability? Why not, if the statute is to be strictly construed? The obvious answer to this question is that such a construction would defeat the object of the statute. Why, then, should a company that permits the engine of another to run upon its track while it is in possession and control of the railroad be relieved of responsibility?

The object of the section, as it has been held repeatedly, is to protect passengers upon railroad trains from accidents, as well as to prevent loss to owners of horses and cattle. (*Corwin* v. *N. Y. & E. R. R. Co.*, 13 N. Y. 42, 48; *Shepard* v. *B., N. Y. & E. R. R. Co.*, 35 id. 641, 643; *Brady* v. *R. & S. R. R. Co.*, 1 Hun, 378, 380.) "One method provided for securing that object," as was said by Judge DENIO in the *Corwin Case*, "is the provision charging the companies with damages for all injuries done to animals where they have disregarded the statute; and, moreover, it is not material from whence or under what circumstances the animals come upon the track, provided they are enabled to get there by the absence of fences or cattle guards." (p. 54.)

It was enacted, as was said in another case, "from public considerations. Its purpose was to protect the traveling public, as well as farmers along the line of railroads, and it should receive such a construction as to afford the protection designed." (*Purdy* v. *N. Y. & N. H. R. R. Co.*, 61 N. Y. 353, 355.) "It should receive a liberal construction to effectuate the benign purpose of its framers." (*Tracy* v. *T. & B. R. R. Co.*, 38 N. Y. 433, 437.)

It was of no concern to the public or to the plaintiffs

whether the strict legal title to the engine that killed the horses was in the defendant or in some other corporation, as long as it was running upon the defendant's track by its invitation, under its regulations, and, indirectly, at least, for its benefit. Sound public policy requires that all trains that are permitted by a railroad company to run upon its track while it is in full possession, should be treated as its trains for the purpose of enforcing the statutory liability for operating the road before it is properly fenced. The defendant had no right to open its line for the use even of its own trains until it had complied with the fencing statute, and when it gave a right of passage to the trains of another corporation it made those trains its own, so far as a violation of the law is concerned. While the engine that did the mischief did not belong to the defendant in the ordinary sense of the strict ownership of property, still, within the broad purview of the statute, passed for the protection of the public and essential to the safety of passengers, I think that any engine which passed over the defendant's road with its consent, and, in a measure, under its control, should be regarded as the engine of the defendant. This position is supported by well considered decisions in other states, made when similar statutes were under consideration, and it is in conflict with no authority to which our attention has been called. (*Fontaine* v. *S. P. R. R. Co.*, 54 Cal. 645; *I. C. R. R. Co.* v. *Kanouse*, 39 Ill. 272; *T. P. & W. R. R. Co.* v. *Rennbold*, 46 id. 143; *E. St. L. & C. R. Co.* v. *Gerber*, 82 id. 362; *Clement* v. *Canfield*, 28 Vt. 302.)

The claim of the defendant that its road was substantially fenced upon the south rests upon the theory that the mill itself was a fence, or stood in the place of a fence. There was no fence, however, between the vacant land in front of the mill and the land of the defendant. If there had been, as the uncontradicted evidence shows, the accident could not have happened.

It is doubtful whether any question was raised upon the trial as to the necessity of a fence at the place in question under that part of the statute which provides that "no railroad cor-

poration shall be required to fence the sides of its road, except when such fence is necessary to prevent horses, cattle, sheep and hogs from getting onto the track of the railroad from the lands adjoining the same." (Laws of 1854, chap. 282, § 8.) Assuming, however, that the question is before us, it should be answered in the light of the rule already alluded to, that the statute should be liberally construed so as to afford the public adequate protection. The command of the statute to all railroad corporations is to erect and maintain fences on the sides of their roads, except when no fence is necessary to prevent horses, etc., from getting onto the track. If the defendant claimed that the locality under consideration came within the exception, it was its duty to show it. It is certain that if there had been a fence of the proper heighth and strength in front of the mill the horses could not have gone upon the track. It is also certain that there was nothing to prevent the various animals named in the statute from straying down the lane leading from the highway to the mill, and, turning to the west, reaching the open space in front thereof, and thence going upon the track as these horses did. It was the aim of the legislature to prevent animals from entering upon the railroad track from the adjoining lands, and wherever a fence is necessary for that purpose the law requires the company to erect it, and inconvenience is no excuse for failing to comply with the requirement. (*Bradley* v. *B., N. Y. & E. R. R. Co.*, 34 N. Y. 427; *Brace* v. *N. Y. C. R. R. Co.*, 27 id. 269.) Was a fence necessary for this purpose at the point in question? "The plain answer would seem to be," as this court said in *Shepard* v. *B., N. Y. & E. R. R. Co.* (35 N. Y. 646) "that it was necessary, * * * as the facts proved." It was further said in that case that the amendment of 1854, quoted above, "was probably aimed at rivers or lakes through whose borders the railroads might run, and where a fence would be unnecessary; or, in other cases, where high rocks or other obstructions would render it unnecessary to fence against the invasion of cattle." In other words, a fence is necessary wherever cattle

can get upon the railroad track from the adjoining lands. This would not apply to highway crossings, of course, as cattle guards, required by the same statute, furnish the only protection that is there practicable; or to that part of a railroad that runs lengthwise upon a highway, where fences would interfere with the rights of the public.

But does the statute apply to horses harnessed and hitched to a wagon? Why not, if they have escaped from the control of the driver? Is a horse less dangerous upon a railroad track because he is harnessed? Does the statute except horses of a certain kind or under certain circumstances? On the contrary, it says that until the fence is built the company shall be liable for the damages done to *any* horses. This is not the case of a traveler upon a highway with his horses in custody, as in *Ditchett* v. *S. D. & P. M. R. R. Co.* (67 N. Y. 425, 428). The horses of the plaintiffs had escaped from custody and went directly from the adjoining lands, which were no part of the highway, onto the track. Although a part of the wagon, as it stood in front of the mill, may have projected for an inch or two over upon the land of the defendant, neither of the horses stood upon such land, and there was no visible boundary between the property of the company and that of the owner of the mill. (*Jewhurst* v. *City of Syracuse*, 108 N. Y. 303.)

The covenant contained in the conveyance of the right of way cannot override the statute nor relieve the defendant from the duty imposed thereby. The plaintiffs were strangers to that covenant, and, so far as appears, did not even know of its existence. If a railroad company can get its right of way cheaper by entering into an agreement with the owner that no fence shall be built upon the land conveyed, it cannot be allowed to claim the protection thereof as against a stranger sueing for damages caused by a violation of the statute requiring the erection of fences.

I think that the judgment should be affirmed, with costs.

POTTER, PARKER and HAIGHT, JJ., concur with FOLLETT, Ch. J. BRADLEY and BROWN, JJ., concur with VANN, J., in

his views, and dissent as to points discussed in the prevailing opinions.  All concur with Vann, J., as to first question discussed by him.

Judgment reversed.