# FIFTH DEPARTMENT

### AT

## GENERAL TERM,

## June, 1891.

60  313
62  297

FREDERICK B. POTTER, Respondent, v. THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COM-
PANY, Appellant.

*A railroad corporation, the lessee of another road, is not bound to maintain division
fences between the leased track and leased land lying adjacent thereto.*

The Revised Statutes (3 R. S. [8th ed.], 1799) require railroad corporations leasing
other lines to maintain division fences, and for a failure to comply with this
requirement the railroads are made liable for injuries to stock.

The New York Central and Hudson River Railroad Company, as lessee of the New
York, West Shore and Buffalo Railroad Company, was the occupant of a strip
of land, of twelve acres, adjacent to the tracks of that road, and of the width
of ten rods which it leased, and its lessee sub-let the strip, except half an acre
thereof, to a party, who tethered a horse upon this piece of land. The horse
broke loose and was injured on the railroad track through fright, induced by
an approaching train.

In an action brought by the sub-lessee to recover the damages resulting from the
injury to the horse:

*Held,* that the railroad company, the lessee, was not liable.

That there was no obligation resting upon it to separate its own land from the
track by a fence, and that the plaintiff, who leased the land, was bound to take
it as it was and use it for the purposes for which it might safely be employed
in its unfenced condition.

APPEAL by the defendant, the New York Central and Hudson
River Railroad Company, from a judgment of the Monroe County

Court, entered in the clerk's office of said county on the 4th day of December, 1890, affirming a judgment of a Justice's Court in favor of the plaintiff for twenty-six dollars and thirty-one cents.

*A. H. Harris,* for the appellant.

*H. G. Pierce,* for the respondent.

DWIGHT, P. J. :

The defendant, as lessee, operating the lines and occupying the real estate of the West Shore Railroad Company, leased to one Hayes a strip of land ten rods in width and containing twelve acres, belonging to that company, and lying alongside its tracks in the town of Perinton, which was not separated from the track by any fence. Hayes, in 1886, sub-let all but half an acre of the strip to the plaintiff, who occupied it for farming purposes. His horse, which was tethered on the strip for grazing, had broken loose and wandered onto the track when one of defendant's trains came in sight. The horse was frightened by the approaching train and ran before it, on the track, until he came to a bridge, where he fell between the ties and broke his leg. The engineer stopped the train as soon as possible after seeing the horse on the track, and before the engine reached him.

The only question in the case is whether, under these circumstances, the railroad company must fence its own land lying along its track from the track itself, or, in default of doing so, be liable to its own tenant for loss of cattle straying from such land onto its track. We think not. There seems to be no American case in point, and the English authorities, under a statute similar to our own, are against the proposition. (*Roberts* v. *Great Western Ry. Co.,* 4 C. B. [N. S.], 504; *Marfell* v. *South Wales Ry. Co.,* 8 id., 525; 2 Sher. & Redf. on Neg., 434.)

In the case last cited the defendant owned a strip of land adjoining its right of way, and separated from it only by a fence which had become broken down. On the strip was a tram-way used by the defendant, and which it permitted the plaintiff to use for a consideration. A horse of the plaintiff drawing a car on the tram-way became frightened by a passing train, and breaking loose from the car escaped onto the track of the defendant and was injured. ERLE, C. J.,

said : " It is clear that the defendants are under no obligation to put. any fence on their own land. The statute which obliges them to fence against the land of the adjoining owner has no application in respect of their own. * * * If the tram-way was without any fence, it is clear that the defendants might lawfully so use it, and if any one choose to have the use of it he would be entitled to it as it was, and would have no right to complain if he found it dangerous and sustained damage for want of a fence. * * * If the fence was known to the plaintiff to be out of repair and broken down, and he choose to hire the use of the tram-road in that state, there would be no contract creating a duty to keep the fence in repair."

This reasoning commends itself to our judgment as correct. The defendant might, no doubt, leave the strip of land unfenced from the track so long as it was made use of for its own purposes, and when it rents it to another occupant, the latter must take it as it is and be content to put it to uses for which it may be safely employed in its unfenced condition.

We are unable to see that a case was made of statutory liability on the part of the defendant to the plaintiff, and are of opinion that the judgment of the County Court and of the justice must be reversed.

MACOMBER, J., concurred.

Judgment of County Court of Monroe county and of the justice of the peace appealed from reversed, with costs.