ADAM KLOCK and HIRAM ALLEN, Appellants, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Railroad fences — where a railroad owns the adjoining lands — easement over them of an adjoining proprietor—a natural barrier—what excuses the railroad from fencing.*

One Klock owned a farm on the north side of the Mohawk river, through which a railroad ran, and in connection with which the railroad company was maintaining a farm crossing at grade so that Klock could reach his lands on that side of the railroad which bordered on the river. In 1873 Klock sold to the railroad the piece of land lying between its road-way and the river, and by the deed the railroad covenanted to maintain said crossing in order that Klock might reach an island in the river belonging to him, which was south of and nearly opposite the premises conveyed to the railroad. The railroad continued to maintain a fence on its north side, nearest the residue of the Klock farm, but there was no fence upon the south side, between its road-way and the piece purchased by it of Klock, nor any fence along the river bank. At the farm crossing there was a gate. After this sale to the railroad a servant of Klock went, by said farm crossing, over the lands of the railroad to the bank of the river, and called the cows of Klock, which had been driven through the river to the island for pasture. The cows returned, and about the time they reached the farm crossing on the side of the railroad an express train came by, frightening the cows, some of which ran upon the track and were killed.

An action was brought to recover the damages occasioned thereby, on the trial of which the complaint was dismissed, the court refusing to submit to the jury the question of the railroad's negligence, or that of its duty to maintain a fence under chapter 140 of the Laws of 1850, as amended by section 8 of chapter 282 of the Laws of 1854.

*Held,* error.

That, by said statutes, the railroad was required to maintain fences along the sides of its track in order to protect itself from the consequences of injuries to cattle, even though it owned the adjoining lands.

That, as a general rule, the statute does not require a railroad to also maintain an exterior fence between its lands outside of, but adjoining, its railroad lands and the lands of adjoining owners.

That the facts of this case were not such that the court could hold, as matter of law, that the railroad was excused for its failure to maintain fences along the sides of its track, by the provision of section 8, which states that a railroad need not fence, " except when such fence is necessary to prevent horses, cattle, sheep and hogs from getting on the track of the railroad from the lands adjoining the same."

That the question whether the Mohawk river was such a natural barrier between said island and the lands of the railroad as freed the latter from its statutory duty to fence should have been submitted to the jury under proper instructions.

APPEAL by the plaintiffs, Amos Klock and Hiram Allen, from a judgment of the Supreme Court, entered in the clerk's office of the county of Montgomery on the 10th day of March, 1891, dismissing the complaint on the merits, with costs, after a trial at the Montgomery Circuit before the court and a jury.

The action was brought by the plaintiffs to recover the value of four cows belonging to plaintiffs, which were killed on the defendant's railroad track by a train of cars.

The plaintiff Hiram Allen was a part owner of the cows injured on the defendant's road, and worked the farm of his co-plaintiff Klock, who was the other part owner of the cows in question.

*G. S. Klock*, for the appellants.

*C. D. Prescott*, for the respondent.

MAYHAM, J.:

Prior to September 3, 1873, the plaintiff Klock was the owner and occupant of a farm on the north side of the Mohawk river in the county of Montgomery, through which the defendant's railroad, road-way and track passed. On that day Klock conveyed to the defendant a strip of land lying between the road-way and the river, in an oblong form of about seven and one-fourth acres. Previous to such conveyance the defendants had maintained a farm crossing at grade across the railroad for the convenience of the Klock farm.

In the deed from Klock to the defendant it was provided that the defendant should maintain the crossing over its road to enable the defendant's grantor to pass to and from an island of about eight acres owned by him in the river and lying opposite the land granted to the defendant.

The width of the land conveyed to the defendant from the farm crossing to the northerly bank of the river was a distance of about one hundred and fifty to one hundred and seventy-five feet, and the distance from the northerly bank of the river, opposite the farm crossing, to the island, was about three hundred and fifty feet, so that the distance from the crossing to the island was about five hundred and twenty-five feet, and the land conveyed by Klock to the defendant was bounded on the south by the north shore of the river, between which and the railroad the defendant maintained no

fence, but on the north side of the railroad, and between it and the Klock farm, a fence was maintained. East and west of the farm crossing, and at the crossing, there was a gate. The island was used for meadow in the summer and pasturage in the fall after the hay crop was harvested.

On the morning of the twenty-third of September, the plaintiffs, by their servants, drove thirty-five cows belonging to the plaintiffs across this farm crossing and through the north branch of the river to the island, and, at about four o'clock in the afternoon of that day, one of the plaintiff's (Klock) employees opened the gate on the north side of the railroad and passed down to the river, and standing upon its north bank on the defendant's land called the cows, and they came from the island; and as twelve of the cows came upon the north bank of the river, on defendant's land, he was notified of an approaching express train coming from the west on defendant's railroad, when he ran to the railroad, followed by the cows, where he tried to signal the train and also to prevent the cows from going upon the track, but failed in accomplishing either, and four of the cows passed upon the track and were hit by the locomotive and killed.

On the trial, at the conclusion of the plaintiffs' evidence establishing these facts, the defendant moved the court to nonsuit the plaintiffs. The plaintiffs insisted upon submitting to the jury the question of defendant's negligence, also the freedom of plaintiffs from contributory negligence, and also the question of defendant's liability for not constructing a fence as required by the statute. The court declined to submit the question to the jury and granted a nonsuit.

The principal and, perhaps, the controlling question in this case is whether the defendant is liable for failing to fence its railroad track as required under the provisions of the general railroad act. (Chap. 140 of the Laws of 1850, as amended by § 8 of chap. 282 of the Laws of 1854.) That section provides as follows: "Every railroad corporation * * * shall * * * erect, and thereafter maintain fences on the sides of their roads, of the height and strength of a division fence as required by law, with openings, or gates or bars therein at the farm crossings of such railroad for the use of the proprietors of the lands adjoining such railroads. * * * And so long as such fences * * * shall not be made, and when not in good repair, such railroad corporation and its agents shall be

liable for damage which shall be done by the agents or engines of any such corporation to any cattle, horses, sheep or hogs thereon, * * * but no railroad corporation shall be required to fence the sides of its roads, except when such fence is necessary to prevent horses, cattle, sheep and hogs from getting on the track of the railroad from the lands adjoining the same."

Two questions may arise in construing this statute as applicable to this case. First. Is the defendant by this statute required to fence its railroad track against the adjoining land of the company, so that the cattle trespassing upon it, and straying thence upon the railroad track, where they are injured, shall be paid for by the company? Second. Is the railroad company liable for not maintaining exterior line fences along its land not used for railroad purposes, but not divided from its railroad by fences along its track?

The language employed by the legislature in imposing this obligation on railroad companies seems clearly to indicate where the fence required by statute shall be located and maintained — " they shall * * * erect and thereafter maintain fences on the sides of their road," etc. If that language is strictly followed, a company could not excuse itself by purchasing a large tract of land lying along their track and maintaining an exterior line of such tract, and at long distance therefrom a division fence between it and adjacent owners.

It is true that, if such exterior fence furnished a complete barrier to any approach to the track by the animals named in the statute, the company would be excused from constructing a fence along the track under the concluding portion of the eighth section above quoted. In *Kelver* v. *The New York, Chicago and St. Louis Railroad Company* (35 N. Y. St. Rep., 673) it was held that the liability of the railroad company for animals killed by the cars, where the railroad was not fenced upon the sides of the tracks, did not arise out of any negligence of the company, but out of the failure to comply with the provisions of the statute. This decision was affirmed by the Court of Appeals in 126 New York, 365. In that case the cattle of the plaintiff strayed from his farm across the unfenced railroad of another company, and then upon the railroad of the defendant, which was also without fences along the sides of its track, and the defendant was held to be liable for the loss suffered

by reason of injury to the cattle. In this case the court hold that, although the cattle, after leaving plaintiff's (Klock) premises, passed over other intervening lands before reaching the defendant's railroad track, still, as there was no intervening barrier to prevent them from reaching the defendant's railroad, the defendant was not excused from the statutory obligation to maintain a fence along the side of its track. To the same effect is *Shepard* v. *Buffalo, New York and Erie Railroad Company* (35 N. Y., 641). From this examination of the wording of the statute, and the decisions construing the same, we are led to the conclusion that the first inquiry above propounded must be answered in the affirmative, and that the defendant in this case was required, in order to protect itself from the consequences of injury to cattle, to construct fences along the sides of its tracks, even though the company owns the adjoining lands, unless there is some other physical barrier, either artificial or natural, upon which they can safely rely as a substitute for such fences. (See, also, *Rhodes* v. *R. R. Co.*, 5 Hun, 344, and *Brady* v. *R. R. Co.*, 1 id., 378.) This conclusion substantially answers the second question propounded above in the negative.

That a railroad company is not bound to maintain an exterior line fence between its lands outside of, but adjoining, its railroad lands, and the lands of adjoining owners. Unless the manner in which the plaintiffs used this crossing, or the particular circumstances of this case take it out of the general rule, and, as matter of law, to exonerate the defendants from liability, the case should have been given to the jury.

But it is insisted, on the part of the defendant, that the Mohawk river is a sufficient natural barrier between the plaintiff's island and the railroad to relieve the defendant from its statutory duty of maintaining a fence along the side of the railroad track as to this plaintiff, and that this case comes within the principle of the rule laid down in *Schermerhorn* v. *Hudson River Railroad Company* (38 N. Y., 103) and *Dolan* v. *The Newburgh, Dutchess and Connecticut Railroad Company* (120 id., 571). In *Schermerhorn* v. *Hudson River Railroad Company* (*supra*) it was held that the railroad company was not bound to fence its road along the banks of the river, or where it runs through channels of the river separated from the river by islands. But that decision seems to have been put upon

the ground that, by the charter of the railroad corporation (§ 24 of chap. 216, Laws of 1846), which relieves the company from any obligation to maintain a fence, " when the said railroad is constructed in the river," the company is exonerated. In *Dolan* v. *Railroad Company* (*supra*) the plaintiff's team was driven by his servant on a narrow strip of land between a mill and the railroad track, and the team was standing partly on this strip and partly on the land of the railroad company, and was left by the driver, when it escaped on to the railroad track and was hit by a train of cars and killed. The track was fenced along the railroad either way from the mill, and the distance from the platform of the mill to the lands of the railroad was four feet and ten inches, and the majority of the court held that, under the last clause of section 8 of chapter 282 of Laws of 1854, it was error for the trial court to refuse to hold that the railroad company was not required to fence its road at this point, upon the theory that the mill and the fences on either side, along the road, constituted a sufficient barrier to prevent animals from going upon the track, and brought the case within the provisions of the above section of the statute, which is as follows : " But no railroad corporation shall be required to fence the sides of its roads except when such fence is necessary to protect horses, cattle, sheep and hogs from getting on to the track of the railroad from the lands adjoining the same."

But it is further urged by the defendant that the Mohawk river is a navigable river, and was a sufficient natural barrier, and that the court will take judicial notice of that fact.

In *People* v. *The Canal Appraisers* (33 N. Y., 461), DAVIS, J., in delivering the opinion of the court, says : " It is assumed, and may be taken as conceded, that the Mohawk river is one of the navigable rivers of the State, and, perhaps, the court may take judicial notice of the fact that it is so." In support of respondent's contention it is urged that as division fences are not required by statute on the line of navigable rivers, between riparian owners, by analogy, they cannot be required along the side of railroad tracks when a navigable river is so located as to constitute a barrier to prevent cattle from going upon railroads. That does not necessarily follow. No such exception is made in the statute. In *Shepard* v. *Buffalo, New York and Erie Railroad Company* (35 N. Y., 646), PECKHAM, J.,

says: "The statute quoted was probably aimed at rivers or lakes through whose borders the railroads might run and where fences would be unnecessary, or, in other cases, where high rocks or other obstructions would render it unnecessary to fence against the invasion of cattle."

In the case at bar we think the court was not authorized, as matter of law, to determine that such natural obstructions existed as to render it unnecessary for the defendant to construct the statutory fence along the sides of its road. That was a fact to be determined by the jury, under proper instructions from the court.

This case differs from the case of *Potter* v. *New York Central and Hudson River Railroad Company* (60 Hun, 314). In that case the railroad company owned land adjoining its tracks, between which and the tracks there was no road fence, and the lessee tethered his horse upon it, the horse broke loose, wandered upon the track and was injured by being frightened by one of the defendant's trains. The question arose between the tenant of the defendant, who leased the defendant's land, and the defendant, when there was no road fence dividing it from the track. No principle, under such circumstances, would, as between the lessor and lessee, make the former liable to the latter. We do not see that this case conflicts with the cases above cited, but depends upon an entirely different principle.

On the whole, we think this case should have been submitted to the jury, and that the nonsuit was error.

Judgment is reversed, new trial ordered, costs to abide event.

LEARNED, P. J., concurred; KELLOGG, J., not acting.